UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

ARTHUR JACKSON,

        Plaintiff,                        Case No. 2:13-cv-17

v.                                           Honorable R. Allan Edgar

JEFFREY WOODS et al.,

        Defendants.
_____/

**OPINION**

        This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Heyns, Schad and Unknown Party. The Court will serve the complaint against Defendants Woods, Eicher, Marilyn, Covert, Brostoski, Millette and Kieper.

**Discussion**

    I.        Factual allegations

Plaintiff presently is incarcerated at the Muskegon Correctional Facility but complains of events that occurred at the Chippewa Correctional Facility (URF). In his *pro se* complaint, he sues Michigan Department of Corrections (MDOC) Director Daniel Heyns, EMS Paramedic Unknown Party, Bureau of Health Care Services Joshua Schad and the following URF employees: Warden Jeffrey Woods, Nurses Unknown Eicher and Unknown Marilyn, Nurse Supervisor Gerald Covert, Doctor Michael Brostoski, Physician Assistant Michael P. Millette and Prison Guard Unknown Kieper.

Plaintiff claims that he has suffered from several different medical ailments during his incarceration at URF. (Compl., docket #1, Page ID#15.) On June 7, 2011, Plaintiff was scheduled for a blood draw from health services. Nurse Eicher retrieved a needle from the pocket of Nurse Marilyn and drew blood from Plaintiff's arm. Physician Assistant Millette helped Eicher with Plaintiff's blood draw. Later that day, Plaintiff's arm developed a rash and became swollen. Plaintiff claims that he contracted the infection H. Pylori from a dirty needle.[1]

On June 8, 2011, Plaintiff was given another blood draw. A week later, Plaintiff was diagnosed with an infection called Klebsiella.[2] Plaintiff received an antibiotic but claims that it failed to cure his Klebsiella and H. Pylori infections. Plaintiff states that Defendants attempted to cover up the infection contracted through Plaintiff's skin as a urine infection. Plaintiff states that he

---

[1] H. Pylori is a spiral-shaped bacterium mostly found in the stomach. The bacteria may penetrate the stomach's protective mucous lining to weaken the lining and make the stomach more susceptible to damage from gastric acids. *See* http://www.webmd.com/digestive-disorders/h-pylori-helicobacter-pylori (viewed August 21, 2013).

[2] Klebsiella is a type of bacteria that can cause different types of infections, including pneumonia and bloodstream infections. *See* http://rarediseases.info.nih.gov/gard/10085/klebsiella/resources/1 (viewed August 21, 2013).

submitted health care requests and grievances for burning sensations that developed in his stomach, chest and esophagus, as well as for gastritis, without any success.

On September 1, 2011, Physician Assistant Millette instructed Nurse Covert to inject Plaintiff with an antibiotic called Rocephin and give him the drug Ciprofloxacin. Plaintiff claims that Millette's instruction was according to "conspiracy and retaliation." (Compl., docket #1, Page ID#3.) Plaintiff states that his health went down hill after those medications. Plaintiff continued to file more medical kites and grievances against health care personnel until another blood draw was scheduled.

In December 2011, Physician Assistant Millette was assigned to draw Plaintiff's blood. Plaintiff asked for Nurse Marilyn to draw his blood instead. Marilyn refused because Plaintiff allegedly had filed a grievance against her. Plaintiff argues that Defendants Millette and Marilyn engaged in a conspiracy to prevent him from getting his blood drawn at that health care visit. Plaintiff filed more grievances and health care kites. On December 22, 2011, Plaintiff saw Millette. When Plaintiff asked Millette if he could see a doctor, he disregarded Plaintiff's request and told Plaintiff he had a mental problem. Plaintiff's blood was not drawn at the December 22, 2011 visit either. (Compl., docket #1, Page ID##7, 8.)

On December 25, 2011, Plaintiff felt like he was having a heart attack or stroke. Half of Plaintiff's face suddenly became paralyzed. Plaintiff was sent to health services and an ambulance was called. During this emergency, Plaintiff complains that Officer Kieper instructed him to get his shoes and coat. The ambulance then escorted Plaintiff to the hospital. The EMS Paramedic Unknown Party drew one tube of Plaintiff's blood, started an IV, gave Plaintiff oxygen, and took Plaintiff's vital signs. He also gave Plaintiff two nitroglycerin tablets. When Plaintiff was being transferred from the ambulance stretcher to a hospital bed, Plaintiff noticed that the Unknown Party

placed a plastic bag with four to five tubes of blood in it on his bed. Since the Unknown Party had only taken one tube of blood from Plaintiff, Plaintiff argues that it was not his. When Plaintiff complained about it to a nurse, Kieper called the nurse out of Plaintiff's hospital room to talk. When she returned, Plaintiff claims that the nurse's helpful demeanor changed. At the hospital, Plaintiff was diagnosed with Bell's palsy, which paralyzed the right side of his face. When Plaintiff was eventually discharged from the hospital, he argues that he was not able to view his medical discharge papers.

Plaintiff complains that Dr. Brostoski refused to allow Plaintiff to receive his pain medication. Because Plaintiff was having problems with his right eye due to the paralysis, Dr. Brostoski's prescribed tape to tape shut his eye at night. Plaintiff argues that nothing was prescribed for his eye such as an eye patch. Because of Dr. Brostoski's actions, Plaintiff suffered from eye irritation and redness. He claims that his sight has also worsened.

In January 2012, Plaintiff finally received an eye patch and eye cream to keep his eye from drying out. While Plaintiff states that his Bell's palsy has subsided, Plaintiff claims that he still suffers from the Klebsiella and H. Pylori infections. Plaintiff also complains that Dr. Brostoski wrongfully reduced his dosage of Zantac and refused to have Plaintiff's blood drawn to examine for bacteria. Plaintiff complains that Dr. Brostoski refuses to have his blood drawn in retaliation for Plaintiff filing grievances and complaints. Plaintiff also states that he has now developed ulcers and fears contracting acquired immunodeficiency syndrome (AIDS) and Hepatitis.

Plaintiff alleges that Millette, Covert, Eicher, Marilyn and Brostoski have falsely accused him of having mental problems and ordered a psych referral for Plaintiff in retaliation for filing complaints. Plaintiff also claims that Defendants Millette, Covert, Eicher and Marilyn engaged in a conspiracy to suppress his grievances and complaints.

Plaintiff alleges the following claims against Warden Woods, MDOC Director Heyns and Bureau of Health Care Services Joshua Schad. First, Plaintiff claims that although he has brought several problems to Warden Woods' attention, Woods has still allowed Plaintiff to be harmed by the other Defendants. Plaintiff states that by denying Plaintiff's Step III grievances, MDOC Director Heyns has allowed his staff to engage in malpractice, gross negligence, medical assaults and denied medical treatment for Plaintiff. Finally, Plaintiff argues that Defendant Schad has approved the denial of Plaintiff's grievance appeals so that Plaintiff will continue to live with pain and suffering.

Plaintiff alleges violations of his First, Eighth and Fourteenth Amendments. He also claims that certain Defendants engaged in a conspiracy. For relief, he requests compensatory and punitive damages as well as declaratory and injunctive relief

II. Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than

a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A. **Defendants Heyns and Schad**

Plaintiff fails to make specific factual allegations against Defendants Heyns and Schad, other than his claim that they failed to conduct an investigation in response to his grievances and wrongly denied his grievance appeals. Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 575;

*Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Plaintiff has failed to allege that Defendants Heyns and Schad engaged in any active unconstitutional behavior. Accordingly, he fails to state a claim against them.

To the extent Plaintiff argues that Defendants Heyns and Schad violated his due process rights by denying his grievance appeals, Plaintiff fails to state a claim. There is no due process right to file a prison grievance. The Sixth Circuit and other circuit courts have held that there is no constitutionally protected due process right to an effective prison grievance procedure. *Walker v. Mich. Dep't of Corr.,* 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003); *Young v. Gundy,* 30 F. App'x 568, 569-70 (6th Cir. 2002); *Carpenter v. Wilkinson,* No. 99-3562, 2000 WL 190054, at *2 (6th Cir. Feb. 7, 2000); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994). Michigan law does not create a liberty interest in the grievance procedure. *See Olim v. Wakinekona,* 461 U.S. 238, 249 (1983); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994). Because Plaintiff has no liberty interest in the grievance process, Defendants' conduct did not deprive him of due process.

B.     **Defendant Unknown Party**

Plaintiff complains that EMS Paramedic Unknown Party placed four to five vials of an unknown person's blood in a plastic bag on Plaintiff's bed while transferring Plaintiff from the ambulance stretcher to Plaintiff's hospital bed. Plaintiff states that EMS Paramedic Unknown Party

had only drawn one vial of Plaintiff's blood in the ambulance. It is unclear from Plaintiff's complaint whether the Unknown Party is a state actor and what constitutional claims Plaintiff intends to bring. Reading Plaintiff's complaint liberally, *see Haines*, 404 U.S. at 520, the only constitutional claim possibly implicated by Plaintiff's allegations is his Eighth Amendment right against cruel and unusual punishment.

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West*, 487 U.S. at 48; *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009); *Street*, 102 F.3d at 814. In order for a private party's conduct to be under color of state law, it must be "fairly attributable to the State." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982); *Street*, 102 F.3d at 814. There must be "a sufficiently close nexus between the State and the challenged action of [the defendant] so that the action of the latter may be fairly treated as that of the State itself." *Skelton v. Pri-Cor, Inc.*, 963 F.2d 100, 102 (6th Cir. 1991) (citing *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 351 (1974)). Plaintiff states that the Unknown Party is employed by Corizon Medical Services at Kinross Correctional Facility. In an MDOC grievance rejection letter dated January 18, 2012, the Grievance Coordinator noted that Kinross paramedics do not work for the MDOC. (Supplement, docket #2-2, Page ID#73.) However, there is no reason to decide whether EMS Paramedic Unknown Party could be considered to be a state actor for purposes of § 1983. Even if he was, Plaintiff's claim fails.

The Court construes Plaintiff's allegations as an Eighth Amendment claim for placing the vials of unknown blood on Plaintiff's hospital bed. The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 102,

103-04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104-05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 899 (6th Cir. 2004). If, however the need involves "minor maladies or non-obvious complaints of a serious need for medical care," *Blackmore*, 390 F.3d at 898, the inmate must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment." *Napier v. Madison Cnty.*, 238 F.3d 739, 742 (6th Cir. 2001).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind in denying medical care." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000) (citing *Farmer*, 511 U.S. at 834). Deliberate indifference "entails something more than mere negligence," *Farmer,* 511 U.S. at 835, but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* Under *Farmer*, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

Plaintiff merely alleges that a plastic bag with an unknown person's blood was placed on his bed. As the vials of blood were in a plastic bag and Plaintiff was not exposed to them, Plaintiff has not shown that those conditions posed a substantial risk of serious harm to him.

-9-

Moreover, the Unknown Party's decision to place the blood on Plaintiff's stretcher while he helped move Plaintiff to a hospital bed does not show any intent to harm Plaintiff. Consequently, Plaintiff's allegations are insufficient to establish that the Unknown Party has been deliberately indifferent to a serious medical need. Plaintiff therefore fails to state an Eighth Amendment claim.

        C.    **Service**

At this stage of the case, the Court finds that Plaintiff's allegations against Defendants Woods, Eicher, Marilyn, Covert, Brostoski, Millette and Kieper are sufficient to warrant service of the complaint.

### Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants Heyns, Schad and Unknown Party will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will serve the complaint against Defendants Woods, Eicher, Marilyn, Covert, Brostoski, Millette and Kieper.

An Order consistent with this Opinion will be entered.


Dated:    9/5/2013              /s/ R. Allan Edgar
                                                    R. Allan Edgar
                                                    United States District Judge